## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **GILMAN BARNDOLLAR** | ) |
| 1239 Independence Ave SE, | ) |
| Washington, DC 20030 | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **CENTRAL INTELLIGENCE AGENCY** | )     **Civil Action No. _____** |
| Washington, D.C. 20505 | ) |
| _____ | ) |
| **As to each Defendant Serve:** | ) |
| | ) |
| **JOHN RATCLIFFE** | ) |
| Director of the Central Intelligence Agency | ) |
| | ) |
| **GENERAL COUNSEL** | ) |
| Central Intelligence Agency | ) |
| Washington, DC 20505 | ) |
| | ) |
| **UNITED STATES ATTORNEY** | ) |
| **FOR THE DISTRICT OF COLUMBIA** | ) |
| Civil Process Clerk | ) |
| 601 D Street, NW | ) |
| Washington, DC 20530 | ) |
| | ) |
| **ATTORNEY GENERAL** | ) |
| **OF THE UNITED STATES** | ) |
| U.S. Department of Justice | ) |
| 950 Pennsylvania Avenue NW | ) |
| Washington, DC 20530 | ) |
| | ) |
| Defendant. | ) |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

For his Complaint, Gilman Barndollar ("Mr. Barndollar" or "Plaintiff"), by the undersigned counsel, states as follows:

1

1.      The Plaintiff brings this action for injunctive relief and other appropriate relief and seeks the disclosure and release of agency records improperly withheld from the Plaintiff by the Defendant, the United States Central Intelligence Agency (CIA), and its subordinate agencies, pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a et seq. and the Freedom of Information Act, 5 U.S.C. § 552(a) et seq.

2.      Further, the Plaintiff brings this action for injunctive relief and other appropriate relief and seeks the amendment of records by the Defendant, the United States Central Intelligence Agency (CIA), and their subordinate agencies, pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a(g)(1)(A) and the Freedom of Information Act, 5 U.S.C. § 552(a) et seq.

3.      Finally, the Plaintiff brings this action for injunctive relief, and other appropriate relief, pursuant to the First Amendment of the Constitution.

4.      In this case, the Plaintiff's basis for the complaint are violations of: (1) Freedom of Information Act; (2) Privacy Act violation;  (3) violating the Administrative Procedures Act by failing to follow their own rules and regulations in an arbitrary and capricious manner; and (4) violation of the First Amendment.

## PARTIES

5.      Plaintiff is a United States citizen and a resident of Washington, D.C.

6.      The Defendant, the Central Intelligence Agency, is an agency as prescribed in 5 U.S.C. § 551(1) and 5 U.S.C. § 552(f).  The Defendant has possession, custody, and control over documents and records that the Plaintiff seeks to retrieve and amend.

## JURISDICTION

7.      The Court has both subject matter jurisdiction over this action and personal jurisdiction over the Defendant pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552a(g)(1), 28 U.S.C. § 1331.

8.     The Court has authority to issue declaratory and injunctive relief under 28 U.S.C. § 1361.

9.     Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552a(g)(5), and 28 U.S.C. § 1391 (b) and (e).

10.     The Court has the authority to award attorneys' fees and expenses under 28 U.S.C. § 2412 and 5 U.S.C. § 552a.

## FACTS

11.     The Central Intelligence Agency ("Agency" or "CIA")) provided the Plaintiff with a Statement of Reasons ("SOR") on August 25, 2022 stating in pertinent part that Mr. Barndollar's security clearance was being denied based upon Guideline L concerns. More specifically:

> On your SF-86 dated 23 November 2021, you listed you are currently employed as a Senior Fellow with Defense Priorities since March 2019. During security processing, you discussed you appeared on Tucker Carlson's show four times a foreign policy expert, and wrote products for the Wall Street Journal and Newsweek, all paid by Defense Priorities. You reported as a freelance writer you wrote several publications to include analysis, commentary, book chapters, peer-reviews, policy papers, reviews, lectures, panels, and conference papers, on foreign and military topics. You noted you were interviewed by the media regarding your publications.

A true and accurate copy of the SOR dated August 25, 2022, is enclosed as Exhibit A.

12.     However, Guideline L explicitly states that a condition that could raise a security concern and could disqualify an individual from holding a security clearance includes: "any employment or service, whether compensated or voluntary, with … any domestic in engaged in analysis, discussion, or publication of material on intelligence, defense, foreign affairs, or protected technology; **and** (b) failure to report or fully disclose an outside activity when this is required."

3

13.     The SOR **never** stated that the Plaintiff failed to report or fully disclose his outside activities.

14.     Furthermore, Defendant asked Plaintiff to send them copies of Plaintiff's writing, speeches, etc to include as part of the security clearance investigation process.

15.     Defendant did not have the authority to request said information nor do they have the authority to store that information as of their system of records. The Defendant's System of Records Notice ("SORN") does not include allowing the Agency to collect First Amendment protected information for purposes of the security clearance adjudications. Pursuant to Executive Order 12968, Sec. 5.2, "... (a) Applicants and employees who are determined to not meet the standards for access to classified information established in section 3.1 of this order shall be: (1) provided as comprehensive and detailed a written explanation of the basis for that conclusion as the national security interests of the United States and other applicable law permit…" This is the purpose of the SOR.

16.     The Plaintiff was honest, transparent, and that he fully disclosed his outside activities. Furthermore, he did not have an affirmative obligation to provide additional information to the Agency about his writings without a signed Privacy Act Statement wherein the Plaintiff explicitly agrees to the collection of his First Amendment Protected activities. 5 U.S.C.§ 552a(e)(7).

17.     Defendant maintains jurisdiction over Plaintiff's security clearance as a final adjudication has not yet occurred.

### Improper of First Amendment Protected Information

18.     The willful collection of Barndollar's First Amendment Protected Information begins on February 7, 2022. In response to Mr. Barndollar's September 8, 2022, request for a

copy of his investigative file, the Agency improperly redacted a substantial portion of that collection as evidenced in the Agency's initial disclosures on November 22, 2022. A true and accurate copy of the Agency's initial disclosures, dated November 22, 2022, is enclosed as Exhibit B.

19.    On February 7, 2022, the CIA stated that it met with the SUBJECT, Gil Barndollar, and that the "SUBJECT was advised verbally of the provisions of the Privacy Act of 1974." Therefore, the Privacy Act being referred to, is the Privacy Act signed as part of the SF86.

20.    Since the CIA is using the SF86 Privacy Act Statement, the CIA is limited to collecting information elicited on the SF86 and no First Amendment protected information - unless specifically acknowledged on a new Privacy Act statement.

21.    On or about February 10, 2022 the CIA asked Barndollar to mail a copy, via FedEx, of all of his First Amendment protected writings and asked for a tracking number that it identified as #7760 1184 3900.

22.    On March 3, 2022, the CIA wrote that, "SUBJECT was advised verbally of the provisions of the Privacy Act of 1974."

23.    On March 3, 2022, the CIA wrote the following statement in his personnel security clearance file, a statement wherein the CIA is collecting First Amendment protected information:

> It was reported that SUBJECT has appeared on Tucker Carlson. SUBJECT has appeared on Carlson's show four times as a foreign policy expert. Each segment was four to five minutes and two were filmed in studio and two were filmed remotely, SUBJECT matter included: Iran, Syrian withdrawal from Iraq, and Turkey and the Kurds. SUBJECT will send his complete curriculum vitae with his publications and TV appearances. SUBJECT was paid by Defense Priorities for his speaking engagements usually $250 for remote appearances and $500 for in studio.

> SUBJECT forgot to list his media publications and appearances but will
> fax a curriculum vitae.
>
> SUBJECT has written for the Wall Street Journal and Newsweek and was
> paid by Defense Priorities for his pieces approximately $200 depending
> on the piece.

24.     On March 16, 2022 the CIA recorded the following summary of their call with

Barndollar.

> SUBJECT was advised verbally of the provisions of the Privacy Act of
> 1974…MEDIA: It was reported that SUBJECT has had contact with
> journalist [Redacted without an exemption] SUBJECT met [Redacted
> without exemption] in 2018 when she worked at American Conservative
> magazine.  He wrote opinion pieces for her for American Conservative
> and Quincy Institute.  The last time he had contact with her was August
> 2021 when he wrote an article for her on US withdrawal from countries
> as well as withdrawal from Afghanistan. All the articles are listed in the
> document SUBJECT provided.

**Administrative Procedures Act**

25.     Guideline L discusses a conflict of interest; however, an applicant applying for a

full-time position is unable to have a conflict of interest. The legal impossibility exists because

the Plaintiff was not working in the position, which could have created a conflict of interest -

instead the Agency is engaging in viewpoint discrimination.

26.     One of the mitigating factors listed in SEAD 4, Guideline L, is "the individual

terminated the employment or discontinued the activity upon being notified that it was in conflict

with his or her security responsibilities." This factor presumes that the security clearance holder

is currently employed in a position that has a conflict of interest - which in the Plaintiff's

situation was not the case. The Plaintiff's full-time employment is providing said analysis and he

did not lie about his employment.

27.     In other words, Defendant misapplied Guideline L by using Guideline L as the basis for the Plaintiff's security clearance.

## FOIA

28.     On June 3, 2024, Plaintiff submitted a FOIA and Privacy Act request to the Central Intelligence Agency (CIA). The submission included specific requests for expedited processing and a declassification review if necessary. A true and accurate copy of the FOIA and Privacy Act request dated June 3, 2024, is enclosed as Exhibit C.

29.     The request was made for all records about Barndollar as well as, "Any documents, records and reports upon which the denial or revocation of the security clearance is based."

30.     The request was both a Privacy Act request and FOIA request, wherein Barndollar asked for the following:

1.  All interagency and intra-agency correspondence that include his name;
2.  All interagency and intra-agency records that include his name;
3.  All investigation and standard forms used in the security clearance adjudication process pertaining to the above;
4.  Any documents, records and reports upon which the denial or revocation of the security clearance is based;
5.  A copy of the entire investigative file, as permitted by the national security and other applicable law, and which shall be provided prior to the written response and in compliance with the Privacy Act's processing timelines time set for a written reply;
6.  Any Privacy Act Statements that Gil Barndollar signed in the past 7 years;
7.  The SORN, any submissions to the Federal Registrar for the SORN, and any comments associated with the SORN that allows for the Agency to collect First Amendment Protected Information about my client
8.  Any and all documents, recordings, notations, or information written or verbal in the past 7 years describing Gil Barndollar and his First Amendment protected speech.

31.     The Plaintiff followed up with a status request  on July 15, 2024. A true and accurate copy of the status request dated July 15, 2024, is enclosed as Exhibit D.

32.     The CIA responded to the July 15, 2024, follow-up on July 25, 2024. The CIA provided a copy of a previous acknowledgement letter dated June 12, 2024, reference number P-2024-00866, and an estimated completion date of March 31, 2025. A true and accurate copy of the CIA response dated July 25, 2024, is enclosed as Exhibit E.

33.     The plaintiff submitted the June 3, 2024, FOIA and Privacy Act request 337 days ago. To date, the CIA has not responded to the FOIA and Privacy Act, thereby violating the timeliness requirements set forth in both 5 U.S.C. § 552 and 5 U.S.C. § 552a.

### Privacy Act Amendment

34.     On November 7, 2024, Plaintiff submitted a Request to Amend Central Intelligence Agency Personnel, Security Clearance, and Classified records to the CIA via fax number 703-613-3007.  A true and accurate copy of this request, dated November 7, 2024, is enclosed as Exhibit F.

35.     On November 15, 2024, the Central Intelligence Agency provided an acknowledgment letter and reference number, P-2025-00117.  A true and accurate copy of this acknowledgment, dated November 15, 2024, is enclosed as Exhibit G.

36.     According to 5 U.S.C. § 552a(d)(2), the Agency must respond promptly informing the requester of whether it will amend the records or not. However, the Plaintiff submitted his record 180 days ago, thereby, violating federal statute's promptness requirement.

37.     The Agency cited Guideline "L" of SEAD 4 as the basis for the revocation. The problem with Guideline "L" is that in order for that to be a legitimate concern the Plaintiff would have to violate both parts of the two part test: (1) employment with a domestic organization in analysis, discussion, or publication of material on intelligence, defense, foreign affairs… **and** (2) **failure to report or fully disclose an outside activity when this is required.**

38.     Furthermore, the Privacy Act allows for the Agency to collect information about his employment, pursuant to the SF86, but once that information is collected - any information about his First Amendment protected activities is prohibited without explicit written consent. 5 U.S.C. § 552a(e)(7).

39.     In other words, the Privacy Act Statement that the Plaintiff signed as part of the SF86 application does not cover his First Amendment Protected Activities.

40.     The Agency **never** alleges that the Plaintiff lied, failed to disclose, or was deceitful in his response about his employment to the Agency. Therefore, the collection and use of this information violates the Privacy Act as well as the Plaintiff's First Amendment right.

### Improper Collection of Plaintiff's Information Under the Privacy Act (5 U.S.C. § 552a(e)(3))

41.     Plaintiff did not sign a Privacy Act Statement before the subject interview where the investigators asked him questions. The agency is required to have the signed Privacy Act Statement, pursuant to 5 U.S.C. § 552a(e)(3), for all persons asked to provide personal information about themselves, which will go into a system of records (i.e., the information will be stored and retrieved using the individual's name or other personal identifier such as a Social Security number).

42.     Any agency that asks for personal information without having a signed Privacy Act Statement is precluded from storing any information about the individual. In his interview, the Plaintiff was asked by Defendant's employees, inter alia, questions regarding his First Amendment protected activities. *See* Exhibit B.

43.     The Plaintiff willingly provided the requested information despite the Agency violating his rights by asking said questions. The Defendant revoked the Plaintiff's security

clearance because of his answers to those questions. The process by which the Agency collected answers to those questions violates 5 U.S.C. § 552a(e)(3). A failure to comply with 5 U.S.C. § 552a(e)(3) resulted in an "adverse effect" on the Plaintiff (namely the denial of his security clearance and accompanying employment) which allows Plaintiff to bring a claim under 5 U.S.C. § 552a(g)(D).

**Improper Collection of First Amendment Information Under the Privacy Act - 5 U.S.C. § 552a(e)(3) and 5 U.S.C. §552a(e)(7)**

44.     The Privacy Act specifically states that the Agency

"shall . . .  inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual (A) the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary; (B) the principal purpose or purposes for which the information is intended to be used; (C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and (D) the effects on him, if any, of not providing all or any part of the requested information[.]

5 U.S.C. § 552a(e)(3).

45.     Additionally, the Privacy Act  states that the Agency "shall . . . maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained  unless pertinent to and within the scope of an authorized law enforcement activity[.]" 5 U.S.C. § 552a(e)(7). Plaintiff did not expressly authorize the collection of information related to his First Amendment rights.

46.     No security clearance rule, regulation, or policy allows for the collection of First Amendment information. The security clearance interview was not part of a law enforcement activity nor have there ever been any criminal allegations. More specifically, Guideline J (Criminal Conduct) of SEAD 4 is never mentioned or referenced in the Plaintiff's security

clearance denial documents. There is no statute that allows for the collection of First Amendment information for a security clearance. Most importantly, the Agency's own SORN does not allow for the collection of this Information.

47.    Since the Plaintiff did not sign a Privacy Act Statement for the interview nor did he sign a Privacy Act Statement specific to the collection of his First Amendment activity, Defendant violated the routine use of the information collected by storing it within its system of records that is shared with other agencies through shared databases.

**Improper Sharing of Information Under the Routine Use Provision of 5 U.S.C. § 552a(b)(3) and 5 U.S.C. § 552a(e)(7)**

48.    The Privacy Act specifically identifies conditions for disclosure of collected information, "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be:

> ...(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section; ...(7) to another agency or to an instrumentality of any governmental jurisdiction within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought;

49.    Since the Plaintiff did not sign a Privacy Act Statement for the interview nor did he sign a Privacy Act Statement specific to the sharing of his First Amendment activity, Defendant violated the routine use of the information collected by sharing it in a security clearance repository that can be accessed by other government agencies.

**Process and Procedures Governing Security Clearance Investigations**

50.    The Director of National Intelligence sets forth all rules governing security clearance investigations. Each federal agency has to follow the guidance provided by the President or his or her designee.

51.    The most applicable and relevant Executive Order, and where the analysis should begin, can be found in Executive Order 13467. Executive Order 13467 was one of many measures taken by the Bush administration post-9/11 aimed at aligning the nation's intelligence community. Executive Order 13467 is titled "Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information," issued June 30, 2008.[1] Executive Order 13467 is the beginning of the statutory framework because: (1) it is the most recent Executive Order on the issue; (2) it appoints the Director of National Intelligence as the Security Executive Agent who promulgates all rules, policies, guidelines, and oversight for all security clearances issued under Executive Authority; and (3) it explicitly directs the application of Executive Order 12968 as the framework by which to determine eligibility for access to classified information.

52.    Furthermore, Executive Order 13467, Section 2.3 specifically dictates:

(c) The Director of National Intelligence shall serve as the Security Executive Agent. The Security Executive Agent:

> (i) shall direct the oversight of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position made by any agency;
>
> (ii) **shall be responsible for developing uniform and consistent policies and procedures to ensure the effective, efficient, and timely completion of investigations and adjudications relating to determinations of eligibility for access to classified information or eligibility to hold a sensitive position;**

---

[1]    For reference, Executive Orders 10865 and 12968 were promulgated February 1960 and August 1995, respectively, and Directive 5220.6 was implemented January of 1992.

(iii) may issue guidelines and instructions to the heads of agencies to ensure appropriate uniformity, centralization, efficiency, effectiveness, and timeliness in processes relating to determinations by agencies of eligibility for access to classified information or eligibility to hold a sensitive position;

(iv) **shall serve as the final authority to designate an agency or agencies to conduct investigations of persons who are proposed for access to classified information to ascertain whether such persons satisfy the criteria for obtaining and retaining access to classified information or eligibility to hold a sensitive position**;

(v) shall serve as the final authority to designate an agency or agencies to determine eligibility for access to classified information in accordance with Executive Order 12968 of August 2, 1995;

(vi) shall ensure reciprocal recognition of eligibility for access to classified information among the agencies, including acting as the final authority to arbitrate and resolve disputes among the agencies involving the reciprocity of investigations and determinations of eligibility for access to classified information or eligibility to hold a sensitive position; and

(vii) may assign, in whole or in part, to the head of any agency (solely or jointly) any of the functions detailed in (i) through (vi), above, with the agency's exercise of such assigned functions to be subject to the Security Executive Agent's oversight and with such terms and conditions (including approval by the Security Executive Agent) as the Security Executive Agent determines appropriate.

53.    Therefore, Executive Order 13467 provides clear guidance for the Director of National Intelligence to control the security clearance process.

**SEAD 1: SECURITY EXECUTIVE AGENT AUTHORITIES AND RESPONSIBILITIES**

54.    SEAD 1 describes the Security Executive Agent's (SecEA), otherwise known as the Director of National Intelligence, roles and responsibilities. Put a different way, SEAD 1 sets forth a common set of guidelines and policies for which all security clearance adjudications by **every** agency **must** comply:

h. developing requirements and procedures, to include but not limited to, the implementation of standardized:

(1) **security questionnaires**;

(2) financial disclosure forms;
(3) polygraph policies and procedures;
(4) foreign travel reporting requirements; and
(5) foreign contact reporting requirements;

i. **developing and overseeing policies and procedures governing uniform investigator and adjudicator training, and promulgating implementing guidance for the same**;

j. **approving** agency requests to establish additional investigative or adjudicative requirements (other than requirements for the conduct of a polygraph examination) that ***exceed the requirements*** for eligibility to hold a sensitive position or access to classified information… [emphasis added]

55.     In other words, if the Defendant wants to ask additional questions, they would have had to receive SecEA approval since SecEA sets forth the requirements for eligibility to hold a sensitive position or access to classified information. Defendant did not request and receive the authority to ask about and collect information about Plaintiff's First Amendment protected activity. SEAD 1 (F)(h-i).

56.     SEAD 1 focuses on creating uniformity throughout the security clearance process. More specifically, SEAD 1 states that, "SecEA…is responsible for…improving the performance of security clearance processing including…(2) evaluating the use of available information technology and databases to expedite investigative and adjudicative processes for all and to verify standard information submitted as part of an application for a security clearance…" SEAD 1(F)(k)(2). Most importantly, SecEA has the authority to designate "investigative agencies" and "adjudicative agencies." This authority is important because although the Agency can share their information with law enforcement, SecEA is not granting the "investigative agency" or the "adjudicative agency" with law enforcement authority.  SecEA's authority is otherwise described in the following paragraph:

The SecEA, with respect to investigations and determinations made by any agency for eligibility for access to classified information and eligibility to hold a

sensitive position, is responsible for: …

    c. serving as the final authority to designate a department, agency, or agencies to:

    (1) conduct investigations of persons who are proposed for eligibility for access to classified information or eligibility to hold a sensitive position to ascertain whether such persons satisfy the criteria for obtaining and retaining eligibility; and

    (2) determine eligibility for access to classified information in accordance with EO 12968. SEAD 1(F)(c)

### SEAD 4

57.    In June 2017, the Director of National Intelligence issued SEAD 4. SEAD 4 sets forth the 13 adjudicative guidelines by which all security clearances are adjudicated. However, Section "A" of SEAD 4 describes the statutory framework for the legal authority of the Directive. It states in pertinent part:

    The National Security Act of 1947, as amended; Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), as amended; Executive Order (EO) 10450, Security Requirements for Government Employment, as amended; EO 12968, Access to Classified Information as amended; EO 13467, Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information; EO 13549, Classified National Security Information Program for State, Local, Tribal and Private Sector Entities; Performance Accountability Council memorandum, Assignment of Functions Relating to Coverage of Contractor Employee Fitness in the Federal Investigative Standards, 6 December 2012; and other applicable provisions of law.

58.    It is important to note that SEAD 4 is listing the derivative authorities that provide Office of the Director of National Intelligence (ODNI) with the responsibility of establishing the processes and procedures for security clearances.

59.    Most importantly, SEAD 4 makes it abundantly clear to whom this guidance applies, where paragraph "C" (Applicability) unequivocally states, "This Directive applies to **any** executive branch agency authorized or designated to conduct adjudications of covered

individuals to determine eligibility for initial or continued access to classified national security information or eligibility to hold a sensitive position."

60.     Therefore, SEAD 1 and SEAD 5 are binding on the CIA.

**SEAD 5: Collection, Use, and Retention Of Publicly Available Social Media Information In Personnel Security Background Investigations And Adjudications.**

61.     The collection of First Amendment protected information is such a sensitive topic in security clearance adjudications that SecEA issued an entire directive narrowly tailoring authority for government agencies to collect said information. SEAD 5 directly references the Privacy Act that must be signed as part of the Standard Form 86 (SF86) that every security clearance applicant must sign. SEAD 5 states in pertinent part that the collection of "social media account communications and/or findings for individual undergoing background or security investigations; publicly available social media communications of third parties with individuals undergoing background investigations…" is evidence of the government narrowly tailoring the collection of First Amendment Protected information for a legitimate government purpose.[2]

62.     The Privacy Act Statement that every security clearance applicant signs expressly states the following:

> I understand that, for these purposes, publicly available social media information includes any electronic social media information that has been published or broadcast for public consumption, is available on request to the public, is accessible on-line to the public, is available to the public by subscription or purchase, or is otherwise lawfully accessible to the public. I further understand that this authorization does not require me to provide passwords; log into a private account; or take any action that would disclose non-publicly available social media information.

Plaintiff never provided written consent to the federal government to collect his First Amendment Protected information. *SF86 Privacy Act Consent Form*. The Agency's collection of First Amendment protected information does not only violate SEAD 1, 4, and 5 but it was a

---

[2]     *Id. 28,060, SF 86 Privacy Act Statement, and SEAD 5*

direct violation of the Privacy Act Statement that he signed.  Thus, Defendant did not have the proper authority to ask and collect the First Amendment protected activity.

### SORN: ODNI-12 - Intelligence Community Security Clearance and Access Approval Repository: 76 FR 42, 745 (Jul. 19, 2011)

63.     The CIA's SORN, otherwise known as the legal authority for the federal government to retain records about individuals, for security clearance Applicants was CIA-23 until November 28, 2022 when the CIA rescinded CIA-23 and adopted ODNI-12 to govern their collection of information pertaining to security clearances. In fact, 87 FR 73198 states the following,

64.     (CIA–23), Intelligence Community Security Clearance and Access Approval Repository, was established to enable authorized personnel to verify individual security clearances or security access approvals throughout the Intelligence Community, in order to appropriately authorize and control access to classified and compartmented information. This database now operates under the authority and direction of the ODNI and is covered by ODNI–12, Intelligence Community Security Clearance and Access Approval Repository.

65.     ODNI-12 tracks all security clearance adjudications and their access to specific databases. But, in order to understand what information needs to be collected for purposes of the security clearance process, ODNI-12 works in conjunction with ODNI-17 which specifically addresses security clearance applications and the associated personnel records.

### SORN: ODNI-17 -- Office of the Director of National Intelligence (ODNI) Personnel Security Records: 76 FR 42739 (Jul. 19, 2011)

66.     ODNI-17 describes the type of information that the Agency is able to collect in their system of records notice. More specifically, it lists exactly what the database can retain:

> This system maintains: (i) Biographic enrollment data including name, date and place of birth, Social Security number, gender, current address, other first or last names, prior address(es), personal email address(es),

personal phone numbers, passport information, employment type (contractor/government) or other status, and; (ii) data returned from or about the automated record checks conducted against current clearance status information and against financial, law enforcement, credit, terrorism, foreign travel, and commercial databases; and (iii) personnel vetting surveys as required by CV.

67.    In other words, ODNI-17 controls and it does **not** provide a specific exception for the collection of First Amendment protected information. The Agency requested information specifically about Barndollar's protected First Amendment activities without a correlating question on the SF86 and no parallel authority to retain that information in the SORN that controls the database that the CIA uses. Standard Form (SF) - (86), vers. November 2016. Therefore, these questions are outside the scope of the SF86 and the standard security clearance investigation considered within the SORN ODNI-17 that governs the system of records containing the security clearance files.

68.    In fact, the SORN goes to great lengths to describe the additional records that will be retained in the database:

ODNI/NCSC-003, Continuous Evaluation Records, retains the covered individual's enrollment information, which includes personal identifiers provided by the subscribing agency to facilitate ongoing automated records checks for enrollees, as well as other personnel vetting status information, previous investigative products, and records documenting suitability evaluations and decisions. This revised notice adds as a records source personnel vetting surveys required by the Federal Personnel Vetting Investigative Standards. Applicants do not complete a personnel vetting survey. Personnel vetting surveys are periodic information collections from the covered individual and his/her supervisor(s) to inform ongoing consideration of potential risk, promote timely detection of behaviors of concern, and address potential issues or provide assistance before risks escalate. Employment applicants receive one-time checks of security-relevant information, are not enrolled for ongoing record checks, and personal identifiers and records returned for applicants are retained in the system only for the duration of their initial vetting. Records of applicants who are not hired will not be kept beyond the initial vetting process. Records returned from checks for any enrollee will be retained in accordance with an approved record control schedule. Data necessary to implement business rules, to perform program assessments, and to satisfy

auditing requirements will be retained. D/As using ODNI/NCSC-003,
Continuous Evaluations Records, must adhere to the principles articulated
in the Federal Personnel Vetting Guidelines, the Federal Personnel Vetting
Investigative Standards, subsequent implementation guidance, Security
Executive Agent Issuances (when applicable), and other policy issuances.
The modified routine uses will be effective 30 days after publication,
unless they need to be changed as a result of public comment, per OMB
A-108, Section 6(e).

69.    The Agency did not have the authority to ask, collect, and store information about

the Barndollar's protected First Amendment activities and associations.

**D.    Defendant Unlawfully Collected Information About Plaintiff's First
Amendment Activities**

70.    SEAD 5 illustrates the great lengths that the Defendant must go through if they

want to collect information that is outside the "routine" or "standardized" SF86, otherwise

identified in SEAD 1. Furthermore, SEAD 5 demonstrates that the SecEA's authority does not

supersede Congress and that if the Defendant is collecting additional information then they have

to follow the proper process of accounting for it in a SORN and in a Privacy Act Statement.

71.    More specifically SEAD 5 illustrates how improper the Defendant questions are

because SEAD 5 specifically states that "covered individuals[3] shall not be requested or required

to: "a. provide passwords; b. log into a private account; or c. take any action that would disclose

non-publicly available social media information." SEAD 5(E)(5). Therefore, the mere "act" of

asking Plaintiff to provide information about his First Amendment protected activities is

impermissible under SEAD 5 because it is meant to reasonably elicit the type of information that

the "investigation agency" (Defendant) was prohibited from asking.

---

[3]    "Covered Individual: (a) a person who performs work for or on the behalf of the
executive branch or who seeks to perform work for or on behalf of the executive branch, but
does not include President or (except to the extent otherwise directed by the President)
employees of the President under 3 U.S.C. § 105 or 107, the Vice President or (except to the
extent otherwise directed by the Vice President) employees of the Vice President under 3 U.S.C.
§106 or annual legislative branch appropriations acts…" SEAD 5(D)(5).

72.    SEAD 5 goes on to describe what constitutes an "investigative record" which cross-references the 2012 Federal Investigative Standards, which lists all authorized forms, processes, questionnaires, database checks, etc. for security clearances. Nonetheless, an "investigative record" for security clearance purposes is defined as "the official record of all data obtained on the covered individual from Trust Information Providers, suitability and security applications and questionnaires, and any investigative activity conducted under the Federal Investigative Standards or as approved by the executive agent." SEAD 5(D)(6). Again, it becomes glaringly obvious that the Defendant violated the Plaintiff's Privacy Act rights and they violated the security clearance investigative and adjudicative process.

## COUNT I

**Violation of the First Amendment of the United States Constitution By Infringing on Plaintiff's Right of Freedom of Speech**

73.    The Plaintiff adopts and incorporates by reference paragraphs 1 through 72 as if fully stated.

74.    Plaintiff does not challenge Defendant's denial of his security clearance, but, rather, he challenges the processes used by Defendant to gather information in the security clearance investigation.

75.    The Defendant injured Plaintiff by depriving him of his ability to work for the Agency and earn a living based upon Plaintiff asserting his professional opinions regarding foreign policy and national security matters in mainstream media.

76.    The Defendant acted willfully, negligently, and wrongfully by using unconstitutional processes to revoke Plaintiff's security clearance for Plaintiff exercising his First Amendment right to freedom of speech.

77.    Plaintiff utilized his First Amendment right to freedom of speech, which formed

the basis for Plaintiff's security clearance revocation. His speech had no relevance to a national security concern, and its consideration by the Agency constituted a constitutional violation.

78.     The First Amendment of the United States Constitution guarantees individuals the right to free speech, association, and the right to assemble.

79.     The Defendant either intentionally, recklessly, or with callous indifference to the federally protected rights of the Plaintiff has threatened, silenced, and/or chilled Plaintiff's rights to freedom of speech and association by using Plaintiff's career as the basis to deny him his security clearance and position in the CIA.

80.     Defendant never offered Plaintiff an opportunity to stop writing, and speaking about the issues of concern - which SEAD 4 requires. Instead, Defendant is making a decision based upon him exercising his freedom of speech for professional purposes prior to being offered a position with the Agency. A very dangerous precedent.

81.     Defendants' actions violate the freedom of the press as much of the speech they are attempting to chill, restrict, impede, and prevent was specifically related to Plaintiff's public writings and public appearances.

82.     Defendant's discriminatory actions and associated practices are overbroad because they prohibit and restrict protected expression. They are not narrowly tailored to serve a legitimate government purpose.

83.     Defendant has not established a sufficient nexus to narrowly tailor their questions in order to ask Plaintiff questions about his First Amendment protected activities.

84.     Every day that the Defendant fails to act on the August 25, 2022 SOR is another day that the Plaintiff is irreparably harmed. The Defendant is abusing its power by using unconstitutional practices to revoke the Plaintiff's security clearance based upon his constitutionally protected speech.

85.    WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant CIA is in violation of the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights by using the security clearance process to censor his constitutionally protected freedoms; (3) an adjudication of the Plaintiff's security clearance without the collection of constitutionally protected material; (4) award Plaintiff reasonable costs and attorney's fees; (5) permanently remove any mention of the questions and answers for the First Amendment protected activities from the Plaintiff's records; and (6) grant such other relief as the Court may deem just and proper.

## COUNT II

### Violation of the Privacy Act, 5 U.S.C. § 552a

86.    Plaintiff adopts and incorporates by reference paragraphs 1 through 85 as if fully stated herein.

87.    Plaintiff submitted a Privacy Act and FOIA request on June 3, 2024.

88.    The Privacy Act and FOIA request was received on June 3, 2024.

89.    The Defendant sent a letter acknowledging receipt on July 25, 2025.

90.    To date, the Defendant has not responded to the Privacy Act and FOIA request, in excess of 180 days.

91.    Any documentation in the possession, custody, and control of Defendant is a record maintained in a system of records, as described 5 U.S.C. § 552a(a)(4)- (5).

92.    Upon information and belief, there are records responsive to Plaintiff's request that are being withheld in full and the Defendant violated 5 U.S.C. § 552a when the agency failed to provide any records of the Plaintiff. The Defendant is wrongfully withholding records and information requested.

93.    Plaintiff has exhausted all required and available administrative remedies.

94.    Plaintiff is being irreparably harmed by reason of Defendant's unlawful withholding of requested records. Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of law.

95.    Plaintiff has a legal right under the Privacy Act to obtain the information he seeks, and there is no legal basis for Defendant's denial of said right. Defendant's refusal to provide Plaintiff with the requested records amounts to a deprivation of Plaintiff's federal rights.

The Defendant's failure to respond to Plaintiff's FOIA request violated the statutory deadline imposed by the FOIA in 5 U.S.C. § 552(a)(6)(A)(ii).

96.    WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a(g)(3)(B); and (4) grant such other relief as the Court may deem just and proper.

## COUNT III

### Violation of the Freedom of Information Act-5 U.S.C. § 552a

97.    Plaintiff adopts and incorporates by reference paragraphs 1 through 96 as if fully stated herein.

98.    Plaintiff submitted a Privacy Act and FOIA request on June 3, 2024.

99.    The Privacy Act and FOIA request was received on June 3, 2024.

100.    The Defendant sent a letter acknowledging receipt on July 25, 2024.

101.    To date, the Defendant has not responded to the Privacy Act and FOIA request, in excess of 180 days.

102.    Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552.

103. Defendant's failure to provide the records within the statutorily provided timelines constitutes constructive exhaustion of administrative remedies.

104. Plaintiff is being irreparably harmed by reason of Defendant's unlawful withholding of requested records. Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of law.

105. WHEREFORE, Plaintiff respectfully requests that the Court: (1) declare that Defendant violated the Freedom of Information Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552(a)(4)(E); and (4) grant such other relief as the Court deems just and proper.

### COUNT IV
### Unequal Enforcement of SEAD 4 against the Defendant

106. The Plaintiff adopts and incorporates by reference paragraphs 1 through 105 as if fully stated.

107. Defendant's actions, under 5 U.S.C. § 706, the government's decision to misuse Guideline L as part of its security clearance determination process was arbitrary and capricious, and an abuse of discretion.

108. The denial was based on speculative risks tied to past lawful activities without actual evidence of security risks.

109. The Defendant did not provide the required opportunity for the Plaintiff to cease his First Amendment protected activities, instead Defendant made a pre-emptive finding that they did not approve of his speech.

110. All security clearance adjudicative agencies must abide by the guidance set forth in SEAD 4.

111.    SEAD 4, Guideline L, is narrowly tailored to meet a legitimate government interest because it does not allow the Government to preemptively deny someone a security clearance for their First Amendment Speech. Instead, the Plaintiff **has to** fail to report or fully disclose this activity.

112.    Defendant must show that the basis for Plaintiff's security clearance adjudication is Guideline L. Guideline L specifically states, "any employment or service, whether compensated or voluntary, with … any foreign, domestic, or international organization or person in engaged in analysis, discussion, or publication of material on intelligence, defense, foreign affairs, or protected technology; **and** (b) failure to report or fully disclose an outside activity when this is required."

113.    The government failed to consider mitigating factors under Guideline L, such as the fact that his prior discussions were in a private-sector role and involved no classified or sensitive information.

114.    A clear reading of SEAD 4, Guideline L, makes it clear that Guideline L applies to when an Applicant is already employed by the Federal Government and not working in a private-sector job.

115.    The first mitigating factor discusses a conflict of interest with an individual's "security responsibilities." A term that has no meaning to a private-sector employee.

116.    The second and final mitigating factor discusses the individual terminating employment upon being notified that it was in conflict with "**their security responsibilities.**"

117.    In addition, the standardless discretion resulted in the inconsistent enforcement of the Defendants' policies and interpretation of existing laws and regulations regarding speech.

118.    The Defendant's actions and processes deprived the Plaintiff of equal protection under the laws of the United States Constitution at the CIA on August 22, 2022, and every day thereafter.

119.    WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant CIA is in violation of SEAD 4; (2) an injunction compelling the Defendant to: (i) cease discriminating against the client; (ii) cease inserting unconstitutional criteria into Defendants' processes; and (iii) adjudicate Plaintiff's clearance issue favorably and reinstate Plaintiff with all benefits, backpay, and compensate him for harm caused; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT V
### First Amendment Retaliation

120.    The Plaintiff adopts and incorporates by reference paragraphs 1 through 119 as fully stated.

121.    The Plaintiff engaged in protected speech by discussing matters of public concern (i.e. the country's foreign policy and national security) on major news networks and major news publications - **never** discussing any classified issues, never stating or implying that he was speaking on the behalf of the Defendant.

122.    The Defendant retaliated against the Plaintiff by denying him a security clearance for said speech.

123.    The Defendant notified the Plaintiff that they were denying the Plaintiff's security clearance for aforementioned speech thereby satisfying the causal link between the conduct and the adverse effect.

124. Defendant's denial of Plaintiff's security clearance satisfies the elements of First Amendment retaliation.

125. Plaintiff does not challenge Defendant's denial of his security clearance, but, rather, he challenges the processes used by Defendant to gather information in the security clearance investigation.

126. WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that Defendant is in violation of the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights by using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## <u>COUNT VI</u>
**Violation of the First Amendment of the United States Constitution**
**Selective Enforcement**

127. The Plaintiff adopts and incorporates by reference paragraphs 1 through 126 as fully stated.

128. Defendant is selecting Plaintiff's speech because they do not agree with his opinions regarding foreign policy and defense.

129. Barndollar's speech and associations that formed the basis of the security clearance denial are constitutionally protected, and, therefore, make the Defendants' actions unconstitutional.

130. Upon information and belief, no other employees had to provide and/or discuss their professional writings as part of any investigation or security clearance questionnaire; he has not been accused of being "dishonest" for failing to disclose his First Amendment protected activities.

27

131.    Upon information and belief, not a single CIA applicant has had to discuss their First Amendment protected activities, not covered on the SF86.

132.    Plaintiff does not challenge Defendant's denial of his security clearance, but, rather, he challenges the processes used by Defendant to gather information in the security clearance investigation.

133.    WHEREFORE, Plaintiff is entitled to relief in the form of (1) a declaratory order that CIA is in violation of the First Amendment; (2) an injunction compelling the Defendant to cease violating Plaintiff's constitutional rights through using the security clearance process to censor his constitutionally protected freedoms; (3) award Plaintiff reasonable costs and attorney's fees; and (4) grant such other relief as the Court may deem just and proper.

## COUNT VII
### Violation of the Privacy Act, 5 U.S.C. § 552a (Defendant's Failure to Obtain a Signed Privacy Act Statement)

134.    The Plaintiff adopts and incorporates by reference paragraphs 1 through 133 as fully stated.

135.    The Defendant did not collect nor ask the Plaintiff to sign a Privacy Act Statement before the subject interview where the investigators willfully asked him First Amendment protected questions.

136.    The agency is required to have the signed Privacy Act Statement, pursuant to 5 U.S.C. § 552a(e)(3), to all persons asked to provide personal information about themselves, which will go into a system of records (i.e., the information will be stored and retrieved using the individual's name or other personal identifier such as a Social Security number). Specifically, the statute requires the agency to:

> (3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—

(A) the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

(B) the principal purpose or purposes for which the information is intended to be used;

(C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection; and

(D) the effects on him, if any, of not providing all or any part of the requested information;

137.    Barndollar was not properly informed via a Privacy Act Statement nor did he consent or provide written acknowledgement that such information could be collected, stored, used, and disseminated.

138.    This is a violation of 5 U.S.C. § 552a(g)(1)(D) as the information collected subsequent to the Defendant's failure to provide the Privacy Notice was and continues to be used against Barndollar and had an adverse effect on him in the form of, among other effects, lost wages, benefits, his security clearance, and damage to his reputation.

139.    The Defendant acted in a manner which was intentional and willful by specifically notifying the Plaintiff before every call of the requirements of the Privacy Act, but never having him sign a Privacy Act form allowing for the collection of the First Amendment protected information.

140.    The Defendant knew of the requirements for the Privacy Act, discussed the Privacy Act before commencing the interview yet they acted with flagrant disregard of the Privacy Act, taken without grounds for believing them to be lawful, and so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.

141.    WHEREFORE, the Plaintiff requests that this Court award him the following

relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a(g)(3)(B); (4) award Plaintiff actual damages and costs under 5 U.S.C. § 552a(g)(4)(A) and (B); and (5) grant such other relief as the Court may deem just and proper.

## <u>COUNT VIII</u>

**Violation of the Privacy Act, 5 U.S.C. § 552a(e)(3) (Collecting Information that is not contained in the ODNI's System of Records Notice Act (SORN), ODNI-17, 89 FR 54,077**

142.    The Plaintiff adopts and incorporates by reference paragraphs 1 through 141 as fully stated herein.

143.    Agencies "shall subject to the provisions of paragraph (11) of this subsection, published in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which notice shall include—

> 1. the name and location of the system;
> 2. the categories of individuals on whom records are maintained in the system;
> 3. the categories of records maintained in the system;
> 4. each routine use of the records contained in the system, including the categories of users and the purpose of such use;
> 5. the policies and practices of the agency regarding storage, retrievability, access controls, retention, and disposal of the records;
> 6. the title and business address of the agency official who is responsible for the system of records;
> 7. the agency procedures whereby an individual can be notified at his request if the system of records contains a record pertaining to him;
> 8. the agency procedures whereby an individual can be notified at his request how he can gain access to any record pertaining to him contained in the system of records, and how he can contest its content; and
> 9. the categories of sources of records in the system;" 5 U.S.C. § 552a(e)(4)

144.    The SORN outlines the information that can be collected during the course of the security clearance process. The SORN specifically cites to threats, crimes, or national security related matters. It does not reference First Amendment activities.

145.    The SORN does not allow for the agency to ask and collect information about the questions asked above. More importantly, the Defendant is not allowed to ask about any First Amendment protected information, speech, thoughts, or opinions except for those narrowly tailored on the SF86 related to terrorism, sedition, and espionage.

146.    The Agency was not allowed to ask about this information because this information is not allowed to be collected under any of the Agency's SORN.

147.    Plaintiff is being irreparably harmed by reason of Defendant's unlawful collection, use, storage, and dissemination of such information without proper authority. Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of law.

148.    This is a violation of 5 U.S.C. § 552a(g)(1)(D) as the information collected and stored in violation and contrary to the SORN was and continues to be used against Barndollar and had an adverse effect on him in the form of, among other effects, lost wages, benefits, his security clearance, and damage to his reputation.

149.    The Defendant acted in a manner which was intentional and willful.

150.    WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a(g)(3)(B); (4) award Plaintiff actual damages and costs under 5 U.S.C. § 552a(g)(4)(A) and (B); and (5) grant such other relief as the Court may deem just and proper.

### COUNT IX
### Violation of the Privacy Act, 5 U.S.C. § 552a(e)(7) (Collecting First Amendment Information Without Proper Authority)

151.    Plaintiff realleges paragraphs 1 through 150 as fully stated herein.

152.    The Privacy Act specifically states that the Agency "shall…maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity."

153.    Plaintiff did not expressly authorize the collection of information related to his First Amendment rights.

154.    No security clearance rule, regulation, or policy allows for the collection of First Amendment information.

155.    The security clearance interview was not part of a law enforcement activity nor have there ever been any criminal allegations. More specifically, Guideline J of SEAD 4 is never mentioned or referenced in the Plaintiff's security clearance revocation documents.

156.    There is no statute that allows for the collection of First Amendment information for a security clearance applicant.

157.    Most importantly, the Agency's own SORN does not allow for the collection of this information.

158.    Plaintiff is being irreparably harmed by reason of Defendant's unlawful collection, use, storage, and dissemination of such information without proper authority. Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of law.

159.    This is a violation of 5 U.S.C. § 552a(g)(1)(D) as the information collected qualify as records describing how Barndollar was exercising his First Amendment rights, which is expressly prohibited without Barndollar's consent – which Defendant did not obtain – or authorized by statute, which does not exist.

160.    First Amendment-related information was and continues to be used against

Barndollar and had an adverse effect on him in the form of, among other effects, lost wages, benefits, his security clearance, and damage to his reputation.

161.    The Defendant acted in a manner which was intentional and willful.

162.    WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a(g)(3)(B); (4) award Plaintiff actual damages and costs under 5 U.S.C. § 552a(g)(4)(A) and (B); and (5) grant such other relief as the Court may deem just and proper.

## COUNT X
### Improper Sharing of Information Under the Routine Use Provision of 5 U.S.C. § 552a(e)(3) and 5 U.S.C. § 552a(e)(7)

163.    Plaintiff realleges paragraphs 1 through 162 as if fully stated herein.

164.    The Privacy Act specifically identifies conditions for disclosure of collection information, "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be:

> ...(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;
>
> ...(7) to another agency or to an instrumentality of any governmental jurisdiction
> within or under the control of the United States for a civil or criminal law enforcement activity if the activity is authorized by law, and if the head of the agency or instrumentality has made a written request to
> the agency which maintains the record specifying the particular portion desired and
> the law enforcement activity for which the record is sought;

165.    Since the Plaintiff did not sign a Privacy Act Statement for the subject interview

nor did he sign a Privacy Act Statement specific to the collection of his First Amendment activity, Defendant violated the routine use of the information collected by storing it in its system of records.

166.    Since the Plaintiff did not sign a Privacy Act Statement for the subject interview nor did he sign a Privacy Act Statement specific to the collection of his First Amendment activity, Defendant violated the routine use of the information collected by storing and sharing the information.

167.    This is a violation of 5 U.S.C. § 552a(g)(1)(D) as the information collected and stored in violation and contrary to the Routine Use notice – or lack thereof - of which Barndollar was notified and this information was and continues to be used against Barndollar and had an adverse effect on him in the form of, among other effects, lost wages, benefits, his security clearance, and damage to his reputation.

168.    The Defendant acted in a manner which was intentional and willful.

169.    WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately disclose the requested records; (3) award Plaintiff reasonable costs and attorney's fees as provided in 5 U.S.C. § 552a(g)(3)(B); (4) award Plaintiff actual damages and costs under 5 U.S.C. § 552a(g)(4)(A) and (B); and (5) grant such other relief as the Court may deem just and proper.

### COUNT XI
### Violation of the Privacy Act - Privacy Act Amendment- 5 U.S.C. § 552a(d)(2)

170.    Plaintiff realleges paragraphs 1 through 169 as if fully stated herein.

171.    Plaintiff is an individual seeking to amend records pertaining to himself via Privacy Act amendment reference number P-2025-00117.

172.    Any documentation in the possession, custody, and control of Defendant is a record maintained in a system of records, as described 5 U.S.C. § 552a(a)(4)-(5).

173.    Pursuant to 5 USC § 552a(e)(5), each agency that maintains a system of records shall maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

174.    Pursuant to 5 USC § 552a(f)(4), each agency that maintains a system of records shall establish procedures for reviewing a request from an individual concerning the amendment of any record or information pertaining to the individual, for making a determination on the request, for an appeal within the agency of an initial adverse agency determination, and for whatever additional means may be necessary for each individual to be able to exercise fully his rights under this section.

175.    According to 5 U.S.C. § 552a(d)(2), the Agency must respond promptly, informing the requester of whether it will amend the records or not. However, the Plaintiff submitted his record 180 days ago, and Defendant has not yet made a determination on the request. Therefore, Defendant has violated the federal statute's promptness requirement.

176.    The Defendant's violation of 5 U.S.C.§ 552a(d)(2) has adversely affected Barndollar in the form of, among other effects, lost wages, lost benefits, inability to obtain his security clearance, and damage to his reputation.

177.    The Defendant acted in a manner which was intentional and willful.

178.    WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the Privacy Act; (2) order Defendant to immediately amend his records, or in the alternative, order Defendant to immediately make a determination on the amendment request; (3) award Plaintiff reasonable costs and attorney's fees as provided in

5 U.S.C. § 552a(g)(4)(B); (4) award Plaintiff actual damages and costs under 5 U.S.C. § 552a(g)(4)(A); and (5) grant such other relief as the Court may deem just and proper.

## COUNT XII
### Violation of the APA - Misapplication of Guideline L (5 U.S.C. § 706(2))

179.    Plaintiff realleges paragraphs 1 through 178 as if fully stated herein.

180.    Plaintiff is not challenging the security clearance determination. Rather, he is challenging the processes used by Defendant in making that determination.

181.    Pursuant to 5 U.S.C. § 706(2)(A),

a "court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be  - (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority or limitations, or short of statutory right; (D) without observance of procedure required by law[.]

182.    SEAD 4 is a directive issued by the executive branch providing guidance for the issuance of security clearance by establishing 13 adjudicative guidelines, which includes aggravating and mitigating factors.

183.    Plaintiff's security clearance was denied based upon Guideline L (Outside Activities) Guideline L discusses a conflict of interest; however, an applicant applying for a full-time position is unable to have a conflict of interest. Because the Plaintiff was not working in the position at the time his outside activity occurred, a conflict cannot exist.

184.    One of the mitigating factors listed in SEAD 4, Guideline L, is "the individual terminated the employment or discontinued the activity upon being notified that it was in conflict with his or her security responsibilities."

185.    Defendant's action in finding there to be a conflict of interest where none can exist was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with Guideline L.

186.    Defendant's actions have resulted in unreasonable delay to adjudication of Plaintiff's security clearance, resulting in, among other harms, lost wages, lost benefits, inability to obtain his security clearance, and damage to his reputation.

187.    Defendant's actions have further been in violation of constitutional rights, in excess of statutory authority, and without observance of procedure required by law.

188.    WHEREFORE, the Plaintiff requests that this Court award him the following relief: (1) declare the Defendant violated the APA by misapplying SEAD 4; (2) order Defendant to adjudicate Plaintiff's security clearance using an appropriate and lawful application of SEAD 4; (3) award Plaintiff reasonable costs and attorney's fees; (5) grant such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF AS TO COUNTS I – XII

**WHEREFORE, the Plaintiff prayerfully requests that this Court:**

189.    Declare the Defendant's failure to comply with FOIA and the Privacy Act to be unlawful;

190.    Order the Defendant to conduct an independent and comprehensive search of its documents and records in response to Plaintiff's FOIA and Privacy Act Request, reference number P-2024-00866;

191.    Order the Defendant to produce all responsive records without further delay or charge;

192.    Enjoin the Defendant from continuing to withhold records responsive to Plaintiff's FOIA and Privacy Act Request;

193.    Declare that Defendant is acting in violation of the APA;

194.    Declare that Defendant is acting in violation of the First Amendment of the United States Constitution;

195.    Order the Defendant to amend Plaintiff's records pursuant to his record amendment request under the Privacy Act, reference number P-2025-00117, or in the alternative, order Defendant to immediately make a determination on the amendment request;

196.    Issue a preliminary and permanent injunction prohibiting Defendant, its agents, officials, servants, employees, and any other persons acting on its behalf from continually violating Plaintiff's constitutional rights and associated practices challenged in this Complaint;

197.    Order Defendant to reassess Plaintiff's security clearance determination applying a proper application of SEAD 4;

198.    Order Defendant to reassess Plaintiff's security clearance determination excluding the information collected in violation of the First Amendment;

199.    Award Plaintiff attorney's fees, actual damages, and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 5 U.S.C. § 552a(g)(4)(A)-(B) and other applicable laws.

200.    Grant such other relief as the Court deems just and proper.

Dated:  May 7, 2025                                  Respectfully submitted,

By: /s/ *Brett J. O'Brien*
BRETT O'BRIEN, ESQ
Bar License #: 1753983
NATIONAL SECURITY LAW FIRM, LLC
1250 Connecticut Avenue
NW Suite 700
Washington, DC 20036
Phone: (202) 600-4996
Fax:     (202) 545-6318