UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **GILMAN BARNDOLLAR**<br>1239 Independence Ave SE,<br>Washington, DC 20030<br><br>Plaintiff,<br><br>V.<br><br>**CENTRAL INTELLIGENCE AGENCY**<br>Washington, D.C. 20505<br><br>Defendant. | Civil Action No. _____<br><br>**DECLARATION OF**<br>**GILMAN BARNDOLLAR**<br>in Support of Complaint for Declaratory and<br>Injunctive Relief |

**DECLARATION OF GILMAN BARNDOLLAR**

I, Gilman Clough Barndollar, do hereby declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge and belief:

1. I am a PLAINTIFF in the above-entitled matter.

2. I am a resident of the City of Washington in the District of Columbia.

3. On November 23, 2021, I completed a SF-86.

4. The security processing of the SF-86 resulted in an interview with an investigator by the Defendant's employees, inter alia.

5. During this interview on February 7, 2022, and in a handful of subsequent telephone conversations, I was asked questions regarding my First Amendment protected activities.

6. I provided my interviewer with a copy of my curriculum vitae (CV), which includes every piece I have ever published, online and in print, all public speaking I have done, and all television, radio, podcasts, and digital media I have participated in. At the time, I had published nearly 100 pieces of opinion and analysis and had appeared on television roughly a dozen times.

7. My investigator and I briefly discussed some of the media work I had done, especially the

most prominent outlets I have appeared in: the Wall Street Journal, Newsweek, and television hits that included four appearances on the Fox News Channel's Tucker Carlson Tonight. The investigator and I did not discuss the actual foreign policy issues I wrote about or spoke about in these outlets – usually U.S. foreign policy in Afghanistan and the Middle East – in more than cursory detail.

8. I explained to my investigator the rough parameters of earned and paid media as I have experienced it. I told her that pay for this work is paltry (for example, $300 for a print op-ed in the biggest circulation paper in America, the Wall Street Journal), but that my think tank, Defense Priorities, pays me separately for all written work and media appearances under their byline, on a sliding scale.

9. I stressed to my investigator that I was (and am) very cautious and deliberate in choosing what media outlets to appear in, especially with regards to foreign media. I have avoided both inflammatory domestic outlets and any media that is controlled or clearly influenced by groups or powers that may be hostile to the United States. I distinctly remember her surprise, during a telephone conversation in the spring of 2022, when I explained that I had been invited on a television show that acquaintances told me was a tool of Lebanese Hezbollah. I turned this appearance down, obviously.

10. I also explained to my interviewer that my first job in Washington, as Director of Middle East Studies at the Center for the National Interest, ended after I twice refused to appear on Russian state-owned media. We discussed this specific issue at some length, as laid out in my investigative file.

11. In my capacity as a commissioned officer in the Army National Guard, I continue to hold a Top Secret/Sensitive Compartmented Information (TS/SCI) security clearance.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: April 24, 2025

                                                Gilman C. Barndollar